**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 14-cv-03510-CMA-KLM

PROFESSIONAL BULL RIDERS, LLC,

Plaintiff,

v.

PERFECT BLEND INTERNATIONAL, LLC, a Florida limited liability company d/b/a perfect Blend International, Inc., and
ERNEST D. MURPHY,

Defendants.

---

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

The matter before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Professional Bull Riders, LLC ("PBR") against Defendant Perfect Blend International, Inc. ("Perfect Blend"). (Doc. # 34.)

## I. BACKGROUND[1]

PBR is the organizer and promoter of top-level professional bull riding events and Perfect Blend, presumably, is a supplier of a non-dairy creamer.[2] (Doc. # 34-2 at 1.) On September 6, 2014, the parties executed a Sponsorship Agreement, the term of

[1] Perfect Blend does not respond to, much less dispute, the statement of material facts set forth by Plaintiff. The Court has reviewed the briefing and supporting materials submitted by both parties and considers the facts undisputed for purposes of Plaintiff's Motion. *See* Fed. R. Civ. P. 56(e).

[2] Neither party explicitly states Perfect Blend's line of business. However, the Sponsorship Agreement designates Perfect Blend as the sponsor of the "Official Non Dairy Creamer of the PBR."

which was from the signing date until the conclusion of the 2014 PBR World Finals, which ended on October 26, 2014. (Doc. # 34 at 2–3.) Pursuant to the Sponsorship Agreement, Plaintiff granted Perfect Blend a license to use Plaintiff's name, certain of its logos, and trademarks and service marks for advertising and marketing Perfect Blend and Perfect Blend's products at PBR events leading up to and during the World Finals. (*Id.*) Additionally, Plaintiff agreed to identify Perfect Blend as the Official Non Dairy Creamer of the PBR and provide live-event exposure for Perfect Blend. (*Id.* at 3–4.) In return for the sponsorship rights, Perfect Blend agreed to pay Plaintiff a fee totaling $250,000, which was to be paid in two installments, one on September 15, 2014, and the other on October 10, 2014. (*Id.* at 4.)

The Sponsorship Agreement is the only written agreement between the parties (*Id.* at 6) and contains the following integration clause:

> All negotiations relative to the matters contemplated by this Agreement are merged herein and there are no other understandings or agreements relating to the matters set forth in this Agreement, except those expressly stated in this Agreement. This instrument sets forth the entire agreement of the Parties. No provision of this Agreement will be altered, amended, revoked or waived except by an instrument in writing signed by the Parties.

(Doc. # 32-2 at 9.)

After Perfect Blend failed to pay the first installment of the sponsorship fee, Plaintiff—in an effort to mitigate its damages prior to the PBR World Finals—did not create certain signage, which saved Plaintiff approximately $600 in costs. (Doc. # 34 at 7.) Perfect Blend also failed to pay the second installment of the sponsorship fee. (*Id.*) Because Perfect Blend did not pay the required fee under the contract, Plaintiff did not

affirmatively provide Perfect Blend live exposure during the PBR World Finals. (*Id.*) Plaintiff, however, continued to recognize Perfect Blend as the Official Non Dairy Creamer of the PBR and honored its license to Perfect Blend to use the PBR Trademarks. (*Id.*) On November 13, 2014, Plaintiff provided written notice of default to Perfect Blend based on its failure to pay the sponsorship fee. (*Id.*) To date, Perfect Blend has not paid the sponsorship fee. (*Id.*)

On December 31, 2014, Plaintiff filed suit against Perfect Blend alleging, among other claims, breach of the Sponsorship Agreement. (Doc. # 1.) Plaintiff filed the instant action in this Court because the Sponsorship Agreement contained the following forum selection clause: "The Parties agree that all suits, actions, claims, and causes of action relating to the construction, validity, performance, and enforcement of this Agreement shall be commenced in Pueblo County, Colorado, or in Denver, Colorado if in Federal Court." (Doc. # 34-2 at 10.) On July 14, 2015, Plaintiff moved for partial summary judgment with respect to its breach of contract claim. (Doc. # 34.) On August 4, 2015, Perfect Blend responded (Doc. # 36), to which Plaintiff replied on August 21, 2015 (Doc. # 37).

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such

that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III. DISCUSSION

### A. JURISDICTION

Perfect Blend contends that this Court does not have general or specific personal jurisdiction over it and, thus, Plaintiff's motion should be denied. Plaintiff counters by asserting that Perfect Blend submitted to the jurisdiction of this Court when it executed the Sponsorship Agreement. The Court agrees with Plaintiff.

Parties to a contract may agree in advance to waive personal jurisdiction in a particular forum through a forum selection clause. *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1963). When parties consent to personal jurisdiction in a certain forum, there is no need to analyze the forum state's long-arm statute or the party's contacts with the forum state. *Leasing, Inc. v. Reservation Ctr., Inc.*, No. 08-cv-2295, 2008 WL 5411478, at *1 (D. Colo. Dec. 29, 2008) (citing *Elec. Realty Assocs., L.P. v. Vaughan Real Estate, Inc.*, 897 F.Supp. 521, 523 (D. Kan. 1995)). Instead, the only relevant inquiry is whether the forum selection clause is enforceable. *Id.*

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992) (citing *M/S Bremen* and noting that "a party resisting enforcement [of a forum selection provision] carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances").

In the instant case, the Sponsorship Agreement contained a forum selection clause designating this Court as the agreed upon venue. Thus, unless this Court finds that the forum selection clause is unreasonable, Perfect Blend has waived personal jurisdiction and voluntarily submitted itself to personal jurisdiction of this Court.

In its briefing, Perfect Blend discusses only minimum contacts, substantial connections, and a lack of purposeful actions directed at this jurisdiction. As such, Perfect Blend has not met its burden of demonstrating that the Sponsorship Agreement's forum selection clause was unreasonable. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (finding the forum selection clause to be not unreasonable because there was no evidence of overreaching, unequal bargaining power, or that the forum would be seriously inconvenient for the trial).

Perfect Blend also misstates the holdings in the cases it cites. For example, Perfect Blend incorrectly cites *Burger King Corp. v. Rudzewicz*, 471 U.S. 474, 475 (1985), for the proposition that "a choice of forum provision, standing alone, is insufficient to confer personal jurisdiction over the Defendant." *Burger King* concerned a choice of **law** provision, and the Supreme Court noted that "[w]here such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id.* at 472 n.14 (internal citations omitted). Similarly, Perfect Blend quotes *Klein Frank, P.C. v. Girards*, in support of its assertion that the Court does not have personal jurisdiction over it. 932 F. Supp. 2d 1203, 1209 (D. Colo. 2013) ("[S]ince the forum selection clause

does not reflect defendants' consent to personal jurisdiction in Colorado, the Court finds that the forum selection clause does not form a basis for personal jurisdiction over defendants.") However, *Klein Frank* is distinguishable because it held that a third-party, who was not a signatory to the contract, was not bound by the forum selection clause. Conversely, in the instant case, Perfect Blend is a party to the Sponsorship Agreement and, therefore, is bound by the terms, including the forum selection clause.

Accordingly, requiring Perfect Blend to litigate this case in this Court, as required by the Sponsorship Agreement, is not unreasonable under the circumstances.

**B. BREACH OF CONTRACT**

Perfect Blend does not deny that it executed the Sponsorship Agreement nor that it failed to pay the required sponsorship fee. Instead, Perfect Blend argues that it entered into a verbal agreement with Plaintiff whereby the Sponsorship Agreement was contingent upon Perfect Blend obtaining "substantial certainty" that it would be landing a large supply deal with Walmart Stores, Inc. Perfect Blend asserts that it did not obtain the Walmart deal, thus, Plaintiff's Sponsorship Agreement "had been cancelled." Plaintiff counters that the Sponsorship Agreement contains a merger clause; accordingly, Perfect Blend is precluded from offering any evidence relating to the alleged oral condition, which would clearly contradict and add to the terms of the Sponsorship Agreement. Plaintiff has the stronger argument.

To recover on a breach of contract claim under Colorado law, a plaintiff must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by

the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). To determine whether the defendant breached the contract, the contract at issue must be interpreted.

The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties at the time the contract was signed. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009); *Roemmich v. Lutheran Hosps. & Homes Soc. of Am.*, 934 P.2d 873, 875 (Colo. App. 1996) (citation omitted). Such intent is determined from the language of the contract itself, and written contracts that are complete and free from ambiguity will be enforced pursuant to their plain language. *Vu, Inc. v. Pac. Ocean Marketplace, Inc.*, 36 P.3d 165, 167 (Colo. App. 2001). Merger clauses, such as the one present in the Sponsorship Agreement, demonstrate the intent of the parties to represent a final and complete integration of the agreement. *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995). A court may look beyond the four corners of an agreement to determine the intent of the parties only when there is an ambiguity in the terms of the agreement. *Vu, Inc., 36 P.3d at 167.* "Even when extrinsic evidence is admissible to ascertain the intent of the parties, such evidence may not be used to demonstrate an intent that contradicts or adds to the intent expressed in the writing." *Nelson*, 908 P.2d at 107. Additionally, written contracts may be modified by later oral agreements only if the oral modification does not relate to material conditions of that contract. *James H. Moore & Assoc. Realty Inc. v. Arrowhead at Vail*, 892 P.2d 367, 372 (Colo. App. 1994); *see also Burnford v. Blanning*, 540 P.2d

337, 340 (Colo. 1975) (finding that a contract cannot be validly changed or modified as to a material condition (*i.e.* purchase price) by a subsequent oral agreement).

In the instant case, the alleged oral agreement at issue—that the Sponsorship Agreement was contingent upon Perfect Blend obtaining substantial certainty that it would be landing a large supply deal with Walmart—relates to a material condition of the Sponsorship Agreement. *See Burnford*, 540 P.2d at 340. Indeed, the alleged oral agreement would vitiate the enforceability of an otherwise written, binding contract. Thus, the Sponsorship Agreement was not modified by the alleged oral agreement at issue.

Further, the cases Perfect Blend cites in support of its position do not stand for the proposition that a written contract, which includes an integration clause, can be voided by an oral agreement.[3] Indeed, the rights and obligations of the parties under the Sponsorship Agreement are clear and unambiguous. *See Vu, Inc.*, 36 P.3d at 167. The Sponsorship Agreement includes a merger and integration clause, which states that the Sponsorship Agreement is the entire agreement between the parties and it cannot be amended or revoked except by an instrument in writing signed by the parties. *See Nelson*, 908 P.2d at 107. Thus, Perfect Blend breached the contract by failing to pay the required sponsorship fee.

---

[3] *See Bennecke v. Ins. Co.*, 105 U.S. 355, 359–60 (1882) (dismissing plaintiff's argument that defendant waived the forfeiture of the insurance policy); *DeFranco v. Storage Tech. Corp.*, 622 F.3d 1296, 1304 n.4 (10th Cir. 2010) ("a subsequent oral agreement between the parties may modify a provision of an earlier written contract, even in the face of a provision in the original contract that modifications must be in writing"); *James H. Moore & Assoc. Realty Inc.*, 892 P.2d at 372 (provision that was allegedly waived was not a material condition of the sale).

## IV. CONCLUSION

Plaintiff has proved that the Sponsorship Agreement was a contract signed by Plaintiff and Perfect Blend; that Plaintiff performed its obligations under the Agreement; that Perfect Blend breached the contract by failing to pay the required sponsorship fee of $250,000; and that Plaintiff has suffered damages due to Perfect Blend's breach. It is

ORDERED that the Motion for Partial Summary Judgment (Doc. # 34) filed by Plaintiff is GRANTED as to liability. The Court reserves ruling on the issue of damages.

DATED: January 5, 2016

BY THE COURT:

Christine M Arguello

____________________________________
CHRISTINE M. ARGUELLO
United States District Judge